## CHOUTEAU *vs.* SEARCY.

1. Hearsay evidence is incompetent to establish any specific fact, which, in its nature, is susceptible of being proved by witnesses who can speak from their own knowledge.

2. It is for the court alone to determine whether a witness is competent, or the evidence admissible. It is therefore erroneous, after permitting the testimony of a witness to go to the jury, to instruct the jury to disregard the testimony, if they should find that the witness was interested.

3. It is erroneous to instruct the jury to find for a party, upon the supposition that they find another fact to be true, when there is no evidence of the existence of such supposed fact.

APPEAL from St. Louis Circuit Court.

GAMBLE *and* BOGY, *for Appellant.*

1. To maintain the action, the plaintiff had to prove that the defendant was a member of the firm of Fontenelle, Fitzpatrick & Co., the drawers of the bill on which this suit is founded.

To charge a person as a partner, one of two things is necessary; he must have permitted his name to be used as one of the firm, or he must have participated in the profits or loss.—Osborn *vs.* Bremer, 2 Nott & McCord's Rep., 427; Shubrick *vs.* Fisher, 2 Dessansure, 148; Gould *vs.* Gould, 6 Wend., 263.

2. The letters read by the plaintiff do not prove a partnership between the drawees of the bill and the defendant, especially as they were written nearly a year after the bill of exchange on which the suit was brought was drawn.

3. No testimony was introduced about a participation in the profits.

4. If there was no proof of a partnership existing between the defendant and the firm of Fontenelle, Fitzpatrick & Co., the court ought to have given the instruction prayed for by the defendant before any testimony was given by the defendant.—Russell *vs.* Bancroft, 1 Mo. Rep., 662, 3.

5. The 1st and 5th instructions given by the court are erroneous; the first is too general, and calculated to mislead a jury, and the fifth was not sustained by any testimony given in the case.—Cleaveland *vs.* Davis, 3 Mo. Rep., 331, 2.

6. The instruction in relation to the admissibility of Mr. Sarpy's testimony was improper, as it presented a different issue to the jury from the one they were sworn to try; and it was purely and alone a question for the decision of the court.—Fugate & Young *vs.* Carter, 6 Mo. Rep., 267; Newman *vs.* Lawless, *Ibid.*, 279; 1 Philips on Ev., 18.

7. Sarpy was a competent witness.

8. The declaration of Fontenelle to Dougherty (see D.'s deposition) ought not to have been received as evidence.

9. For, although the declaration of each member of a firm, that he is a partner, is evidence to charge himself, it is no evidence of the fact against any other party. (2 Starkie on Ev., 25, 287; Whitney *vs.* Ferris, 10 Johns. Rep., 66; Sweetney *vs.* Turner, *Ibid.*, 216.)    See the case of Dixon, impleaded with Russell & Christy, *vs.* Hood, 7 Mo. Rep., 414, where the doctrine is examined.

10. The rule of court read and relied upon by the plaintiffs did not preclude the objection from being made to Dougherty's deposition, at the time it was made; but, on the contrary, it is expressly provided in the rule, that exceptions, on the ground of competency, may be made at any time.

11. If the exception to Dougherty's deposition had been sustained, there would have been no testimony to support the fifth instruction given by the court.

12. The evidence so strongly and decidedly preponderates against the verdict, that a new trial ought to have been granted.—Singleton *vs.* Mann, 3 Mo. Rep., 464; Clemens *vs.* Laville & Morton, 4 Mo. Rep., 80; Dooly & Kirkland *vs.* Jennings, 6 Mo. Rep., 61.

TOMPKINS, J., *delivered the opinion of the Court.*

This is an action of assumpsit, brought in the Circuit Court of St. Louis county, by Leonard Searcy, against Pierre Chouteau, junior. Judgment was given for Searcy, and, to reverse it, Chouteau appeals to this Court.

The action is founded on a bill of exchange, dated 16th of May, 1835, and alleged to have been drawn by Chouteau, as one of the firm of Fontenelle, Fitzpatrick & Co., on Pratte, Chouteau & Co.

To prove a partnership between Chouteau and Fontenelle, Fitzpatrick & Co., the plaintiff produced several witnesses, who testified, that many drafts similar to that here sued on were drawn by the drawers of this bill, on Pratte, Chouteau &· Co., in favor of different persons, during the year 1835, and were duly paid, some by Chouteau himself, and others by Pratte, Chouteau & Co.

One Daugherty, for the plaintiff, testified, that he had learned from said Fontenelle, that the consideration of the draft in question was horses, wagons, &c., got for the mountain trade, from Searcy, the plaintiff, and that the firm of Pratte, Chouteau & Co. ought to have accepted the draft; that his general course of trade was through Pratte, Chouteau & Co., as he always understood, on which firm he was in the habit of drawing drafts, and his credit on the frontier was based exclusively on the credit of Pratte, Chouteau & Co. The same course of business, he always understood, was pursued by Fontenelle, Fitzpatrick & Co. during the years 1835 and 1836. It was in evidence, that Fontenelle had drawn on Pratte, Chouteau & Co. before he became associated with Fitzpatrick and others. The defendant excepted to the evidence given by Daugherty. The defendant produced one John B. Sarpy, who, being examined on his *voir dire,* stated, that he did not know whether he was interested in the event of the suit or not, and could not say whether he would be a gainer or loser by the disposition of the suit or not; that he was *now* a partner of Mr. Chouteau's; that he lived with Pratte, Chouteau & Co. in 1835; he was not certain, and could not say, whether he had an interest in the profits of the concern of Pratte, Chouteau & Co. at that time, or not.

The court permitted him to give evidence to the jury, but afterwards stated to the jury that they must disregard his testimony, on the ground of interest, if they find that he was a partner, or interested in the profits of the house of Pratte, Chouteau & Co. at the time the draft was drawn. The defendant excepted to this decision of the court.

The firm of Fontenelle, Fitzpatrick & Co., according to the plaintiff's evidence, was composed of Fontenelle, Fitzpatrick, Drips, Sublette, and Bridgor.

The plaintiff also read in evidence two letters proved to have been written by Chouteau, for the purpose of proving that Chouteau was, at the time of drawing this draft, a partner in the firm of Fontenelle, Fitzpatrick & Co. These letters bear date, one in March, 1836, the other in April of the same year; by the latter it appears, that Pratte, Chouteau & Co. (of whom the defendant, appellant, is one) sent one Pilcher to the mountains, to settle the accounts of Pratte, Chouteau & Co. with the firm of Fontenelle, Fitzpatrick & Co. In that letter,

this passage occurs: "In relation to the proposition made by us respecting an interest in the mountain business, he (Pilcher) is invested with full power in all matters relative to that business; and, should you conclude, after you all meet, to exclude Pratte, Chouteau & Co. from any interest, and rely on them as your equippers, you may rest assured of the most prompt and efficient support from them," &c.

The court instructed the jury—

1st, That if they find, from the evidence, that the drawers and Chouteau were embarked together in a fur-catching or trapping business, and were to share both the profits and loss, they must find for the plaintiff:

2d, That if they believed, from the evidence, that the firm of Pratte, Chouteau & Co., or any other firm of which Chouteau was a partner, received from the plaintiff, Searcy, horses, wagons and other property, for which he had not been paid, the plaintiff is entitled to recover the same on the common counts of the declaration, if they cover the nature of the demand.

To the giving of these instructions the defendant excepted.

The points to be decided are—

1st, Did the court commit error in permitting the evidence of Daugherty to go to the jury, and in directing the jury to disregard the testimony of Sarpy, in case they found him to be a partner, &c.?

2d, Did the court commit error in giving the instructions above mentioned?

1. The plaintiff incorporated in the bill of exceptions, and relied on a rule of the Circuit Court, which requires exceptions to depositions to be filed before the trial of the cause, &c., except "saving to the competency or relevancy of the testimony therein contained." The exception here being to the admissibility of the testimony, the rule of the Circuit Court is of no effect, and we are left to inquire if the testimony of Daugherty ought to have gone to the jury. All the testimony of Daugherty was what he had learned from Fontenelle, one of the drawers, and hearsay evidence is not admissible, in a case like this, to prove a specific fact. (Greenleaf, p. 112.) As it is the province of the jury to consider what degree of credit ought to be given to evidence, so it is for the court alone to determine whether a witness is competent, or the evidence admissible. Whether there is any evidence, is a question for the judge; whether it is sufficient, is a question for the jury. (1 Philips, 18.) The court, acting in its own province, decided that Sarpy was, in this case, competent to testify, and consequently his testimony was admissible: the court, then, committed error in afterwards telling the jury to disregard his testimony in case they should find him a partner of Pratte, Chouteau & Co.

2. The first instruction complained of is indeed very broad, viz.: if the jury find that the drawers and Chouteau were partners in the fur trade, and were to share both the profits and loss, they will find for the plaintiffs; this instruction is given, too, without any regard to the time when the partnership existed, whether before or after the drawing of the bill of exchange sued on. It was above stated, that it was the province of the court to say when there is no evidence, and that of the jury, to say when the evidence given is sufficient. In one of the letters

of Chouteau, given in evidence by the plaintiff, dated eleven months after the date of the draft here sued on, it is said in express terms, that Mr. Pilcher was sent to the drawers, to ascertain whether Fontenelle, Fitzpatrick & Co. would receive Pratte, Chouteau & Co. as partners; and from the same letter it appears, that P., C. & Co. were, at the date of that letter, merely the equippers or wholesale creditors of Fontenelle, Fitzpatrick & Co.: it is not even pretended, in the evidence, that either Chouteau, or Pratt, Chouteau & Co., ever held themselves out to the world as the partner or partners of the drawers of the bill; for it cannot be contended seriously, that the mere acceptance and payment of bills, drawn by these drawees, will constitute Pratte, Chouteau & Co. their partners. The Circuit Court, then, committed error, in giving that instruction.

The second instruction is objectionable for the same reason as the first, to wit, that the plaintiffs had given no evidence whatever of a partnership, and therefore had no right to have any instruction from the court, as to the liability of Chouteau, in case they found an existing partnership; it was liable also to this objection, that there was no evidence that the property described in that instruction ever came from Searcy to the defendant, or to any firm of which he was a member. Even the testimony of Daugherty, exceptionable as it is, did not go to show that such property came from Searcy to Pratte, Chouteau & Co., or to any other firm of which Chouteau was a partner; he only stated that he learned from Fontenelle, that the consideration of the draft in question was horses, wagons, &c., got for the mountain trade from Searcy, but by whom got is not said. One would suppose they were bought by the drawers of the bill. Sarpy, in his evidence, states, that in March, 1836, nearly a year after the drawing of this bill, Fontenelle, Fitzpatrick & Co. sold to Pratte, Chouteau & Co. all the stock in trade in the mountains, consisting of all their horses, wagons, mules, tents, camp equipage and traps, &c. If it be admitted that these horses, wagons, &c., be the same which the drawers of the bill, one year before, perhaps, purchased from Searcy, most certainly Searcy could have no right of action on that account against Pratte, Chouteau & Co.

The appellant made other points, which it is not necessary to decide, because, if the same cause of action be again tried, he may, by using due diligence, prepare his testimony in time for the trial.

The judgment of the Circuit Court is reversed, and the cause remanded.